*In re* KB

Docket No. 180337. Submitted October 1, 1996, at Lansing. Decided February 7, 1997, at 9:20 A.M. Leave to appeal sought.

   A therapist treating the respondent, K.B., filed a petition in the Ingham County Probate Court seeking to have the respondent hospitalized for psychiatric treatment. Following a hearing pursuant to MCL 330.1469; MSA 14.800(469), on October 11, 1993, the respondent was ordered to undergo combined hospitalization and outpatient treatment for a period not to exceed ninety days, with the hospitalization portion of the treatment not to exceed sixty days. In addition, the respondent was ordered to take the medications prescribed by the medical staff. The respondent was discharged from the hospital and enrolled in alternative outpatient treatment on November 18, 1993. On December 7, 1993, the probate court was notified that the respondent had refused to take her medications. On December 9, 1993, the probate court met with the respondent's case manager and then ordered that the respondent be rehospitalized pursuant to the original order. The respondent appealed the order, and the probate court dismissed the appeal. The respondent appealed to the Ingham Circuit Court, alleging violation of her due process rights. The court, Peter D. Houk, J., affirmed the probate court's ruling. The respondent appealed by leave granted.

   The Court of Appeals *held*:

   1. The respondent's due process rights were not denied when she was returned to involuntary hospitalization without notice or a prior hearing giving her an opportunity to be heard.

   2. The statutory procedures for rehospitalization without a prior hearing pursuant to MCL 330.1469(9)(b); MSA 14.800(469)(9)(b) satisfy due process guarantees and do not violate the Due Process Clauses of the United States and Michigan constitutions.

   Affirmed.

1. CONSTITUTIONAL LAW — DUE PROCESS.

   The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

2. CONSTITUTIONAL LAW — DUE PROCESS.

   A determination of what due process dictates in a particular situation requires the consideration of three distinct factors: the interest that will be affected by the official action; the risk of an erroneous deprivation of that interest through the procedures used and the probable value that additional or substitute safeguards would have; and the government's interest, including the function involved as well as the fiscal and administrative burdens that the additional or substitute procedures would require.

3. MENTAL HEALTH — DUE PROCESS — PERSON REQUIRING TREATMENT — REHOSPITALIZATION.

   The procedures embodied in the Mental Health Code that allow a court to order the rehospitalization of a person requiring mental health treatment without a prior hearing satisfy due process guarantees and do not violate the Due Process Clauses of the United States and Michigan constitutions (US Const, Am XIV; Const 1963, art 1, § 17; MCL 330.1469[9][b]; MSA 14.800[469][9][b]).

*Donald E. Martin*, Prosecuting Attorney, and *Susan L. LeDuc*, Deputy Chief Assistant Prosecutor, for the people.

Michigan Protection and Advocacy Service (by *Mark A. Cody*), for the respondent.

Amicus Curiae:

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Santiago Rios*, Assistant Attorney General, for the Department of Mental Health.

Before: MCDONALD, P.J., and BANDSTRA and C. L. BOSMAN*, JJ.

BANDSTRA, J. Respondent, K.B., appeals by leave granted an order of the circuit court dismissing her appeal and affirming the probate court ruling that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ordered her returned to involuntary hospital confinement. We affirm.

Respondent has received extensive mental health services for approximately ten years. Since July 1991, she has been subjected to at least five psychiatric hospitalizations, one of which involved respondent's attempting to commit suicide. Following a probate court hearing held on October 11, 1993, respondent was ordered to undergo combined hospitalization and outpatient treatment for a period not to exceed ninety days pursuant to MCL 330.1469; MSA 14.800(469) of the Mental Health Code. Of that ninety days, the hospitalization portion of the treatment was not to exceed sixty days. In addition, the probate court ordered that respondent take medications prescribed by the medical staff.

On November 18, 1993, respondent was discharged from the hospital and was enrolled in alternative outpatient treatment. On December 7, 1993, the probate court was notified that respondent had refused to take her medications as required by the court's order because she feared that the medications would harm her unborn child. On December 9, 1993, the probate court met with respondent's case manager to review respondent's noncompliance and thereafter ordered that respondent be returned to hospitalization care pursuant to the original order. Respondent subsequently appealed the order, and, after a December 20, 1993, hearing, the probate court dismissed the appeal, finding that the statutory criteria for rehospitalization had been met. Respondent appealed this ruling to the circuit court, arguing, inter alia, that the statutory provision that allowed her to be rehospitalized without a prior hearing was a violation of her due process

rights. Thereafter, the circuit court affirmed the probate court's ruling after finding that the statute did not violate respondent's due process rights. The circuit court noted that the statute provided respondent the opportunity to appeal the rehospitalization order shortly after its imposition and that, although respondent's liberty interest was of great magnitude, the state had an interest in protecting respondent and her unborn baby. Thereafter, respondent filed an application for leave to appeal to this Court with regard to the due process issue, and we granted leave.

Respondent argues that her due process rights were denied because she was returned to involuntary hospitalization without notice or a prior hearing giving her an opportunity to be heard.[1] We disagree. Under the Mental Health Code, a person subject to a petition for involuntary civil commitment has the right to a hearing before a judge or jury and may not be committed unless it is established by clear and convincing evidence that the individual is a person requiring treatment. MCL 330.1465; MSA 14.800(465). Within four days of the filing of a petition, the probate court must give the person who is the subject of the petition a copy of the petition and notice of the rights

---

[1] Although respondent challenges the constitutionality of MCL 330.1469(13); MSA 14.800(469)(13) on due process grounds, it is clear after reviewing § 469 in its entirety that the appropriate analysis should focus on MCL 330.1469(9)(b); MSA 14.800(469)(9)(b) rather than subsection 469(13). The original probate court ruling that ordered hospitalization was issued pursuant to subsection 469(4) of the Mental Health Code, rather than for continuing treatment under subsection 469(10). The subsection cited by respondent, 469(13), only applies to orders for continuing treatment under subsection 469(10), and not those issued pursuant to subsection 469(4). We also note that § 469 was amended by 1995 PA 290, effective March 28, 1996, and subsection 469(13) is now codified as subsection 469(14).

to a full court hearing, to be present at the hearing, to legal representation, to a jury trial, and to an independent medical evaluation. MCL 330.1453; MSA 14.800(453). Once "an individual is found to be a person requiring treatment," the probate court may order hospitalization, alternative treatment that does not include hospitalization, or combined hospitalization and alternative treatment. MCL 330.1468(2); MSA 14.800(468)(2). If the court decides that a combined plan of hospitalization and alternative treatment is warranted, the court may order such treatment for a period not to exceed ninety days, of which the hospitalization may not exceed sixty days. MCL 330.1469(4); MSA 14.800(469)(4). If the agency or independent mental health practitioner directed to supervise the individual during the ninety-day period brings to the court's attention the fact that the individual is not complying with the court's order, the court, without a hearing, may either modify the original order to direct another program of alternative treatment or issue a new order directing that the person be hospitalized. MCL 330.1469(8); MSA 14.800(469)(8), MCL 330.1469(9); MSA 14.800(469)(9). Once the probate court issues a new or modified order requiring hospitalization, the individual must receive notice of the new order and the investigative report that the order was based on, as well as notice of the individual's right to demand a hearing. MCR 5.744(E). Upon an application for a hearing, the court must schedule a hearing within ten days of its receipt. MCR 5.744(F).

In the present case, no one argues that these statutory procedures were violated. Instead, respondent challenges on due process grounds the probate

court's authority to rehospitalize an individual without a hearing. The fundamental requirement of due process is " 'the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *In re Attorney Fees of Jacobs*, 185 Mich App 642, 645; 463 NW2d 171 (1990), quoting *Mathews v Eldridge*, 424 US 319, 333; 96 S Ct 893; 47 L Ed 2d 18 (1976) (citation omitted). A determination of what due process dictates in a particular situation requires consideration of three distinct factors: (1) the interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value that additional or substitute safeguards would have; and (3) the government's interest, including the function involved as well as the fiscal and administrative burdens that the additional or substitute procedures would require. *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995); *Jacobs, supra.*

Regarding the first factor, it appears settled that the revocation of a conditional release from hospitalization involves a liberty interest that should be afforded due process protection. *Lewis v Donahue*, 437 F Supp 112, 114 (WD Okla, 1977); *In re True*, 103 Idaho 151, 158; 645 P2d 891 (1982); *In re Anderson*, 73 Cal App 3d 38, 43-44; 140 Cal Rptr 546 (1977). Therefore, this factor would weigh significantly in favor of providing an opportunity to be heard with regard to this issue at a meaningful time. Obviously, the most meaningful time would be before issuance of the order of rehospitalization.

With respect to the second factor, the risk involves an erroneous hospitalization because of the absence of a prior hearing. This risk is significantly reduced

because the statute provides many protections to the individual in the original proceedings and because of the limited time frame that the court orders may encompass. The court's rehospitalization order must be entered less than ninety days from the original treatment determination. Moreover, the more distant the rehospitalization determination is from the original order, the less significant the duration of the deprivation of liberty would be because the treatment is capped at a total of ninety days from the original order. See *Dietrich v Brooks*, 27 Or App 821, 827-828; 558 P2d 357 (1976) (recognizing that the 180-day limit on the original order was a substantial protection against abuse of rehospitalization without a prior hearing). In this case, for example, respondent would be rehospitalized for a period not exceeding twenty-three days.[2] Finally, the duty to give notice, provide the report, and provide a hearing shortly after rehospitalization offers substantial protection against erroneous deprivation of liberty. MCR 5.744(E) and (F). Similar procedures in other jurisdictions have been found to be sufficient to avoid a due process violation. *In re Richardson*, 481 A2d 473, 480-484 (DC App, 1984); *True, supra* at 163; *Anderson, supra* at 47-48.

With regard to the second part of the second factor, the probable value of a hearing before rehospitalization appears minimal. See *Richardson, supra* at 483 (opining that the risk from a rehospitalization does not compare to the original commitment determination and that the probable value of a judicial hearing

---

[2] Using October 11, 1993, to November 18, 1993, as the dates on which respondent was hospitalized, the remainder of the original sixty-day hospitalization period would be twenty-three days.

is not great because the question is peculiarly medical in nature and more properly left to medical professionals as opposed to the judiciary). As previously stated, this is primarily true because of the narrow time frame that the original order encompasses. A substantial change in circumstances over such a short period is unlikely.

Finally, with respect to the governmental interests involved, the government has a significant interest in the protection of the individual and the general public. *Richardson, supra; True, supra* at 162; *Anderson, supra* at 47. In this case, respondent, who was pregnant, had shown a history of suicidal behavior and was refusing to take prescribed medications. The delays attendant with requiring a prior hearing before rehospitalization may have proved detrimental to respondent and her fetus.

After considering the above factors, we conclude that the procedures embodied in the Mental Health Code satisfy due process guarantees. The various measures to ensure that the individual's rights are protected in the initial treatment determination, combined with the continued right of the individual to appeal during treatment, afford satisfactory protection against arbitrary or erroneous deprivation of liberty. In addition, the brief duration of the treatment period minimizes the risk of any erroneous deprivation of liberty resulting from changed circumstances. Court-ordered rehospitalization under subsection 469(9)(b) is appropriately based primarily on determinations of necessary treatment by medical professionals. The risk of arbitrary or erroneous actions under this provision is minimized by the ability of the patient to appeal the court's order and have a hearing

within ten days of the request and by the short duration of any such order. Thus, the court's power to order rehospitalization without a prior hearing pursuant to MCL 330.1469(9)(b); MSA 14.800(469)(9)(b) does not violate the Due Process Clauses of the United States and Michigan Constitutions. US Const, Am XIV; Const 1963, art 1, § 17.

We affirm.