*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In the Matter of* ANN MARIE MORICONI.

ANN MARIE MORICONI,

        Appellant,

v

DONNA SEELY,

        Appellee.

FOR PUBLICATION
June 10, 2021
9:00 a.m.

No. 356037
Oakland Probate Court
LC No. 2018-384352-MI

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Appellant, Ann Marie Moriconi, appeals as of right the probate court's order requiring Moriconi to undergo involuntary mental health treatment. MCL 330.1455 sets forth the rights and procedure afforded the subject of a petition for mental health treatment, including information gathering, clinical reports, legal representation, team members, and proposed treatment plans. The subject of a mental health petition may file a request with the probate court to temporarily defer a hearing by voluntarily remaining hospitalized, choosing outpatient treatment, or pursuing a combination of hospitalization and outpatient treatment. MCL 330.1455(6). When Moriconi advised the probate court of her intent to exercise a deferral and voluntarily agree to treatment, the court apprised Moriconi that the deferral period had passed. After a motion for reconsideration was filed, the probate court denied the motion, citing Moriconi's failure to execute and submit the appropriate form. Because there is no time limitation imposed on the right to request a deferral and record evidence was lacking regarding Moriconi's notice of her deferral rights, the probate court erred in refusing to address Moriconi's request. We vacate the probate court's order for involuntary mental health treatment and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Moriconi's sister, Donna Seely, filed a petition seeking involuntary mental health treatment for Moriconi. Moriconi was hospitalized pending a hearing on the petition. At the start of the

hearing, the probate court requested confirmation from all parties that they agreed to handle the hearing via Zoom conference. Counsel for Moriconi expressed agreement on her behalf. However, after the witnesses had been sworn but before any witnesses had testified, the following colloquy occurred between Moriconi and the probate court:

> [*Moriconi*]: Before -- I want to interrupt, please. I'd like to interrupt, please.
>
> I do not agree to this hearing. I want a deferral. I want [the probate court] to explain to me a deferral. I have been requesting a deferral and they did not give me a PCM Form 235. I want the judge to explain to me what a deferral is. That is what I am requesting. I am requesting -- I am not agreeing to the stipulation. I want a deferral. I have been asking for a deferral -- I have been asking to sign in voluntarily since day one. I want a deferral. Please, Judge, explain to me . . . what a deferral is.
>
> *The Court*: Ma'am, there was already a deferral opportunity. Once that's --
>
> [*Moriconi*]: No.
>
> *The Court*: Excuse me.
>
> [*Moriconi*]: Judge.
>
> *The Court*: Ma'am, ma'am, once that has passed, the hospital can opt to go to hearing. That way if you're a non-voluntary patient they can keep you even if you decide to sign yourself out. So, we can proceed with the hearing.
>
> [*Moriconi*]: Judge . . . .
>
> *The Court*: Ma'am, ma'am, I'm not going to debate it with you. Counsel has called --
>
> [*Moriconi*]: I was sick at the time they asked me.
>
> *The Court*: Ma'am, ma'am, that may be, but now we're at the hearing phase . . . .

The probate court did not make an inquiry of Moriconi's counsel regarding whether there was an explanation or discussion of the deferral period with her before the date of the hearing. Rather, the court proceeded with the hearing and the testimony from witnesses. Seely, Moriconi's sister, testified that she had not been in Moriconi's home for several months because of the pandemic. However, in a recent visit to Moriconi's home, Seely found that Moriconi had no consumable food, water, or toilet paper in the home. There was trash all over the floor. Although Moriconi had a dog, there was no indication that she was feeding the dog. Instead, it appeared that the dog had rummaged through the trash in search of food. Seely expressed that Moriconi lost weight, did not seem to be taking her medications, and was extremely paranoid. Moriconi was

concerned with elections and conspiracy theories and believed that people were trying to break into her home. She did not appear to be managing her household and had not opened her mail for months.

Dr. Leonard Swistak, a licensed psychologist employed by Havenwyck Hospital, examined Moriconi and reviewed her record. His impression was that she suffered from a delusional disorder or "could be a schizophrenic paranoid type." Dr. Swistak described Moriconi as "quite paranoid and delusional in her thinking and behavior." He noted that she was easily agitated, took notes on everything said, and did not trust others. Dr. Swistak opined that Moriconi's behavior interfered with her ability to interact with the world. In light of the petition and testimony by Seely, Dr. Swistak concluded that Moriconi was not eating properly, left her home in disarray, and was previously hospitalized. Yet, Moriconi did not believe that she suffered from a significant mental illness. Dr. Swistak recommended a 60-day inpatient hospitalization with medication management and individual and group counseling.

On cross-examination, Dr. Swistak described Moriconi's demeanor while hospitalized as angry and controlling. In support of his opinion, the doctor noted that Moriconi represented that she had to use the bathroom, but made him wait 10 to 15 minutes before she returned. Additionally, Dr. Swistak seemingly testified that the hospital staff spoke with Moriconi about a deferral,[1] but she expressed that she was not feeling well, went to her room, and never came back. He concluded that Moriconi was "very hostile and angry" about her hospitalization, believed that her sisters were conspiring against her, and did not believe that she needed "any type of treatment."

Moriconi testified that she suffered from mental illness, including attention deficit disorders, depression, and anxiety. She admitted that she was last hospitalized in August 2018. Moriconi was taking most, but not all of her medications. She needed to see a psychiatrist, but she had not received a recommendation for a doctor near her Southfield home. Moriconi testified that she had not been to the grocery store and did not like to go out at night. Moriconi had signed up for grocery delivery, but had not completed the process. Nonetheless, she ate soup, crackers, and frozen meals that she had in her home. Moriconi testified that there was a dead bird on her sidewalk that she considered to be "like a threat."

Moriconi again expressed that she objected to the hearing. She denied that she refused to take medication or that she refused to voluntarily agree to her hospitalization. Rather, Moriconi expressed that she was sick when presented with the deferral information. Specifically, she was sweating and experienced digestive distress for hours. Therefore, she had not refused to complete paperwork to enter herself into treatment voluntarily; rather, she had been so physically sick on that day that she would have been unable to sign any such paperwork. Moriconi expressed that she did not need a court order to comply with outpatient health instructions because she would voluntarily follow a treatment plan. At the conclusion of her testimony, Moriconi's counsel did not address a deferral or present a closing argument.

---

[1] In the transcript, all of Dr. Swistak's answer to this question could not be transcribed. Thus, his statement addressing any deferral meeting was not completely clear from the record.

The probate court found that Moriconi was a person requiring treatment, granted the petition, and ordered Moriconi to undergo up to 180 days of assisted outpatient treatment and up to 60 days of hospitalization. Counsel for Moriconi at the hearing petition was later released from further representation. Successor counsel subsequently filed a motion for reconsideration on Moriconi's behalf, alleging that the probate court deprived Moriconi of her right to a deferral. The probate court denied the motion for reconsideration by faulting Moriconi for her failure "to sign the required form in the presence of counsel and file it with the Court." Further, the court concluded that the deferral was triggered by the court's receipt of form PCM 235, Moriconi did not execute or file the form, and the expression of a desire to defer by Moriconi did not perfect the requirements to defer the hearing. Moriconi now appeals.

## II. STANDARD OF REVIEW

We "review[] de novo a matter of statutory interpretation." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019). The most reliable evidence of legislative intent is the plain language of the statute. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. *Gardner v Dep't of Treasury*, 498 Mich 1, 6; 869 NW2d 199 (2015).

Additionally, we "review[] for an abuse of discretion a probate court's dispositional rulings and review[] for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Tchakarova*, 328 Mich App at 182 (citation omitted). "The probate court necessarily abuses its discretion when it makes an error of law." *In re Portus*, 325 Mich App at 381 (quotation marks and citation omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. (quotation marks and citation omitted). "An error is harmless if it did not affect the outcome of the proceeding." *Id*. at 396. "A lower court's error is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Moriconi alleges the probate court abused its discretion by granting the petition for involuntary mental health treatment after Moriconi clearly indicated her desire to defer the hearing. We agree.

The process for deferring a hearing on a petition for involuntary mental health treatment is addressed in MCL 330.1455. MCL 330.1455(3) provides, in relevant part, that the subject of a petition who is hospitalized pending a hearing on the petition "shall meet with legal counsel, a treatment team member assigned by the hospital director, a person assigned by the executive director of the responsible community health services program or other program as designated by the department, and, if possible, a person designated by the subject of the petition . . . ." One of

the purposes of this meeting is to inform the subject of the petition of his or her right to request a temporary deferral of the hearing. MCL 330.1455(3)(d).

MCL 330.1455(6) governs the filing of a request to defer the hearing and provides:

The subject of a petition under [MCL 330.1434] may file with the court a request to temporarily defer the hearing for not longer than 60 days if the individual chooses to remain hospitalized, or 180 days if the individual chooses outpatient treatment or a combination of hospitalization and outpatient treatment. The request shall include a stipulation that the individual agrees to remain hospitalized and to accept treatment as may be prescribed for the deferral period, to accept and follow the proposed plan of treatment . . . for the deferral period, or to accept and follow the proposed plan for outpatient treatment, and further agrees that at any time the individual may refuse treatment and demand a hearing under [MCL 330.1452].

Significantly, "[t]he request to temporarily defer the hearing shall be on a form provided by the department and signed by the individual in the presence of his or her legal counsel and shall be filed with the court by legal counsel." *Id*. "Upon receipt of the request and stipulation under subsection (6), the court shall temporarily defer the hearing." MCL 330.1455(7).

In the present case, Moriconi interrupted the hearing on the petition for involuntary mental health treatment before any of the witnesses testified. She expressly requested a deferral and sought an explanation from the probate court regarding a deferral. Moriconi further stated that she had "been requesting a deferral" but the necessary form had not been provided to her. Moriconi stated that she had been asking to participate in the treatment voluntarily since the outset of the proceedings. In response, the probate court stated that "there was already a deferral opportunity" and indicated that that opportunity had passed. Later in the hearing, Moriconi testified that she did not refuse to sign paperwork to admit herself into treatment voluntarily; rather, she was extremely sick on the day that occurred and would have been unable to sign any paperwork. The only other reference to a deferral seemingly occurred during Dr. Swistak's testimony. Dr. Swistak appeared to testify that hospital staff was supposed to "do a deferral" with Moriconi, but Moriconi left because she was not feeling well and did not return. Although Dr. Swistak's testimony did not explicitly address whether Moriconi received the required meeting, it supported Moriconi's testimony that the meeting was not completed because Moriconi became ill at that time.

MCL 330.1455(3) dictates that the subject of a petition *shall* meet with several people, including counsel, to be informed, in relevant part, of his or her right to defer the hearing on the petition. "Our Supreme Court has explained that courts should give the ordinary and accepted meaning to the mandatory word 'shall' . . . unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." *In re Portus*, 325 Mich App at 391 (quotation marks and citation omitted). On the available record, there is no indication that this mandatory meeting actually took place, even if one had been scheduled or

attempted.[2]  Regardless of Moriconi's initial objection to the hearing occurring, Moriconi's and Dr. Swistak's testimony should have caused the probate court to question whether there was compliance with MCL 330.1455(3) and whether the mental health team members apprised Moriconi of mandatory procedure governing the right to defer the hearing.

Indeed, MCL 330.1455(6) sets forth the particular procedure the subject of a petition seeking a deferral must follow.  Specifically, the individual's request must include a stipulation that the individual will remain hospitalized, accept treatment, make the deferral request on a specified form, and legal counsel must file the deferral.  MCL 330.1455(6).  The court, upon receiving the stipulation and request, "*shall* temporarily defer the hearing."  MCL 330.1455(7) (emphasis added).  Again, nothing indicates that "shall" was not meant to be given its mandatory meaning in MCL 330.1455(7).  The court therefore does not have discretion regarding whether to defer the hearing once it has received the stipulation and request.  In light of Moriconi's initial objection and the testimony elicited at the hearing, the trial court erred by granting the petition for involuntary mental health treatment without determining whether Moriconi met with and was apprised of the right to defer by the team of mental health professionals and her legal counsel, MCL 330.1455(3)(a-d).

When notified of Moriconi's objection to the hearing, the probate court rejected the challenge, stating that the opportunity for a deferral had passed.  However, MCL 330.1455 does not contain any temporal limitations regarding when the subject of the petition may request a deferral.  Indeed, the plain language of MCL 330.1455(6) only requires that the request for a temporary deferral shall:  (1) be on  a form provided by the department; (2) signed by the subject of the petition in the presence of her legal counsel; and (3) filed with the court by legal counsel.  This is in contrast with other provisions of the Mental Health Code, MCL 330.1400 *et seq*., such as that governing the process for requesting an independent clinical evaluation.  That statute, MCL 330.1463(1), states:

> If requested before the first scheduled hearing or at the first scheduled hearing before the first witness has been sworn on a petition, the subject of a petition in a hearing under this chapter has the right… to secure an independent clinical evaluation . . . .  [MCL 330.1463(1).]

We note that Moriconi's statements at the outset of the hearing did not meet the deferral requirements set forth in MCL 330.1455(6).  However, the trial court erred by concluding that Moriconi could not request the opportunity to file her request for a deferral at the commencement of the hearing because the plain language of the statute contained no time limitation.  As noted, Moriconi made clear at the outset of the proceeding that she wanted a deferral, requested a deferral, was willing to participate in treatment voluntarily, and was not given the appropriate deferral form.  Pursuant to MCL 330.1455(6), the form was to be provided to Moriconi "by the department" and

---

[2] During the hearing, Moriconi referred to the required deferral form by its specific name—"PCM Form 235."  This implies that she did learn about the deferral procedure at some point.  However, she indicated, under oath, that the required meeting did not occur.  No other witnesses contradicted this testimony.  Again, Dr. Swistak's testimony seemingly supports Moriconi's contention that the meeting was not completed because of illness.

completed in the presence of her counsel. Considering the issue that Moriconi's statements raised regarding whether the required meeting—at which deferral was to be discussed—actually occurred, the court should have at least sought more information on the topic, rather than dismissing Moriconi's request outright.

In its opinion and order denying Moriconi's motion for reconsideration, the probate court reasoned that it had not erred by proceeding with the hearing after Moriconi raised the issue of deferral because "deferral is triggered by the [c]ourt's receipt of the deferral form," and Moriconi "had not perfected any of the requirements for the [c]ourt to defer the hearing" at the time of her request. However, it was apparent at the start of the hearing that Moriconi sought to meet the requirements of MCL 330.1455(6), mentioned the necessary form, and requested further guidance from the probate court regarding the filing of a deferral. Under the circumstances, the court's reasoning was mistaken.

This Court has held that "the procedures embodied in the Mental Health Code satisfy due process guarantees." *In re KB*, 221 Mich App 414, 421; 562 NW2d 208 (1997). Due process of law requires that before a deprivation of life, liberty or property by adjudication there must be notice and an opportunity to be heard. *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 550; 899 NW2d 408 (2017). Here, the court was on notice that the procedures specified in the applicable portion of the Mental Health Code were apparently not followed. This raises due process concerns, especially when dealing with involuntary mental health treatment. Significantly, an order granting a petition for involuntary mental health treatment creates "collateral legal consequences" flowing from the individual's involuntary commitment. See *In re Tchakarova*, 328 Mich App at 179-181 (discussing, in the context of mootness, the legal consequences that flow from an order for involuntary mental health treatment, such as ineligibility to possess firearms pursuant to federal regulations). Moreover, "[i]t is axiomatic that an individual subjected to involuntary mental health treatment will be significantly affected by the order because treatment decisions will be made for the individual and, if inpatient treatment is ordered, his or her freedom of movement will be limited." *Id*. at 181.

In light of the notice that the proper procedures may not have been followed, the court should have at least inquired into whether Moriconi had in fact been denied her statutory right to the required meeting. The failure to conduct such a meeting would call into question whether Moriconi had a meaningful opportunity to request a deferral. Although Moriconi's request for a deferral at the hearing did not meet the statutory procedure, Moriconi made clear that she desired a deferral and sought guidance regarding the form and the means necessary to comply. Considering the serious consequences associated with an order granting involuntary mental health treatment and Moriconi's explicit indication that she sought a deferral, the probate court's decision to dismiss Moriconi's deferral arguments outright and proceed with the hearing fell outside the range of reasonable and principled outcomes such that it constituted an abuse of discretion. *In re Tchakarova*, 328 Mich App at 182 (citation omitted). While the court was not statutorily required to grant a deferral until Moriconi had followed the procedure set forth in MCL 330.1455(6), this

does not mean that Moriconi should have been denied a meaningful opportunity to request a deferral.[3]

Vacated and remanded to the probate court to examine whether the proper deferral procedures were followed or to permit Moriconi to file a deferral in compliance with the statute. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

---

[3] When Moriconi initially objected at the hearing and requested a deferral, she was not given the opportunity to confer with her counsel and he was not given the opportunity to answer Moriconi's questions that she posed to the probate court. It is unclear if the nature of the proceedings, via Zoom conference, had any bearing on the failure to allow for a consultation between the attorney and client.