*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CHADD LONDOWSKI.

---

ARLINE LONDOWSKI,

       Petitioner-Appellee,

v

CHADD LONDOWSKI,

       Respondent-Appellant.

FOR PUBLICATION
February 17, 2022
9:00 a.m.

No. 355635
Berrien Probate Court
LC No. 2020-000737-MI

---

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

BORRELLO, P.J.

Respondent appeals as of right the probate court's initial order for mental health treatment. Following oral argument, this Court requested additional briefing on the issue of whether a claim for ineffective assistance of counsel may be made against counsel representing a person in a civil commitment proceeding. We conclude that due process requires a finding that counsel is subject to claims of ineffective assistance of counsel in civil commitment proceedings. We further conclude that here, counsel may have been ineffective for failure to investigate the rationale behind the petition used in this civil commitment proceeding. However, because the record is incomplete relative to why counsel failed to interview the petitioner or what evidence could have been elicited from such an interview, and other claims of ineffective assistance of counsel raised in his appeal, we remand this matter for an evidentiary hearing on respondent's claims of ineffective assistance of counsel.

## I. BACKGROUND

This case arises out of a petition for mental health treatment filed by petitioner, Arline Londowski, who is respondent's grandmother. Petitioner requested that respondent be hospitalized because he suffered from bipolar disorder and schizophrenia, and as a result of his mental illness, he was likely to injure himself or others in the near future, he could not care for his own physical health, and he was unwilling to participate in voluntary treatment. Petitioner alleged

-1-

that respondent "is easily agitated; rocks back &[]forth while holding ears and mumbles; talks to self; continuously shakes head; exclaims/babbles/blurts out words and phrases; locks doors & make mother sleep outside[.]" Furthermore, petitioner also contended that respondent had been verbally abusive toward others and exhibited violent behavior toward family members.

The probate court held a hearing on the petition. Dr. Priya Rana, a board-certified psychiatrist, testified during the hearing that she had evaluated respondent and reviewed his medical history. Rana had diagnosed respondent with schizophrenia. She explained that respondent exhibited paranoid behavior, that respondent insisted that he not be called by his first or last name, and that respondent instead "wanted to be called by [the] letter C or be referred [to] by his Ameren number." Rana also testified that respondent claimed that "somehow Ford and [the] hospital had communicated" and decided to put him in the hospital "to protect somebody else." According to Rana, respondent "was very suspicious of the doctors in the ER." She indicated that during respondent's current hospitalization, he isolated himself in his room, slept most of the time, and became irritable quickly. Rana concluded that respondent needed to be hospitalized and on medication because he was likely to injure himself or others intentionally or unintentionally as a result of his mental illness, he did not understand the extent of his mental illness, he was not taking care of his basic physical needs, and he was refusing to take his prescribed medications. Rana explained that respondent refused to take his medications because he did not believe that he had a mental illness or that he needed treatment.

Respondent testified on his own behalf. He explained that he had been living with his mother, Denise Londowski. Petitioner did not live with them. Although he admitted that he became agitated as the petition alleged, he contended that the remaining allegations in the petition were false. Respondent testified that his agitation was caused by living with his "mother's habits" and being hospitalized. Respondent stated:

> This is not a place I wanna be. So being here and -- without having an absolute need to, I assume would make anybody angry and agitated. So that's the only truth that I can find in any of this.

Respondent believed that he and his mother just needed to discuss how to have a better relationship, and he stated that he believed Rana's schizophrenia diagnosis was "not true." Respondent denied being verbally abusive, aggressive, or threatening toward anyone. He also maintained that he had been showering regularly, eating regularly, and taking care of himself. He explained that he did not lock his mother out of the home on purpose, that she often forgets her keys when she leaves home, that he habitually locks the door when she leaves, and that there was an incident where he did not let her into the apartment right away when she returned because she was insulting him and cursing at him. Respondent believed that he did not need medication, that he was "here because of a mistake," that "what is on this petition is simply not true," and that the mental health diagnoses resulting from the petition was not accurate.

Respondent's counsel also called Denise[1] to testify at the hearing. Denise admitted that she and respondent "had conflicts," and she further testified that respondent "just seems a little unstable in the evening" and that she thought respondent "had like a mental breakdown." With respect to the incident where Denise was locked out of the home, respondent's counsel elicited the following testimony from Denise:

> *Q*. Okay. So Denise, specifically in there, there's a statement that Chadd locked you out of your house, and -- and we talked about that. Will you explain what happened with that?
>
> *A*. I don't think that has anything to do with his -- the mental issues? That is -- yeah, I have locked my keys in the house before, and I might have yelled at him, "Open the door." And then I had the officer over there, and he -- I mean -- yeah, he didn't let the officer in, so I just had to spend the night with a friend. And that was that.
>
> *Q*. Okay.
>
> *A*. About my keys. I got a spare key now. Plus, we -- I was having problems with my door -- my door keys anyways. But I -- apparent -- the officer that was there probably put that in the petition.

Denise explained that petitioner was her mother and that petitioner filed the petition because petitioner was tired of Denise calling her for advice.

The probate court granted the petition and ordered respondent to receive combined hospitalization and assisted outpatient treatment for up to 180 days and that respondent would be hospitalized for up to 60 of those 180 days. The court also ordered that the administration of injectable medication would be permitted if respondent did not comply with taking medication orally. Respondent now appeals.

## II. ANALYSIS

On appeal, respondent argues that he was denied the effective assistance of counsel at the hearing on the petition for mental health treatment because his counsel's conduct undermined the proper functioning of the adversarial process such that the hearing cannot be relied on to have produced a just result.

### A. THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN CIVIL COMMITMENT PROCEEDINGS

As an initial matter, although the standards governing ineffective-assistance-of-counsel claims in the criminal context are well developed, see, e.g., *Strickland v Washington*, 466 US 668,

---

[1] Because Denise, respondent, and petitioner all share the same last name, we refer to Denise by her first name.

687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the proceedings at issue in this appeal are not criminal in nature. "Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness . . . generally are referred to as 'civil commitment' proceedings." *In re Portus*, 325 Mich App 374, 382; 926 NW2d 33 (2018) (citations omitted). Civil commitment proceedings are governed by Chapter 4 of the Mental Health Code, MCL 330.1400 *et seq. In re Portus*, 325 Mich App at 382. Accordingly, we first must consider whether a respondent in an involuntary mental health treatment proceeding has a right to the effective assistance of counsel grounded in the United States Constitution, Michigan Constitution, statute, or court rule. It appears that this question has not been formally addressed by any Michigan appellate court.

Resolution of this question presents issues of constitutional law, as well as issues involving the interpretation and application of statutes and court rules, all of which are matters of law that this Court reviews de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

It is clear that a person who is the subject of a petition for involuntary mental health treatment has been provided a statutory right to be represented by counsel. Pursuant to MCL 330.1454(1), "[e]very individual who is the subject of a petition is entitled to be represented by legal counsel." The court must appoint counsel to represent the subject of a petition within 48 hours after receipt of a petition and other required documents, or 24 hours after hospitalization if an individual has been hospitalized, unless an appearance has been entered on behalf of the subject of a petition. MCL 330.1454(2). The "subject of a petition" is "an individual regarding whom a petition has been filed with the court asserting that the individual is or is not a person requiring treatment or for whom an objection to involuntary mental health treatment has been made under section 484." MCL 330.1400(k). "Involuntary mental health treatment" means "court-ordered hospitalization, assisted outpatient treatment, or combined hospitalization and assisted outpatient treatment as described in section 468." MCL 330.1400(f). The probate court may order such treatment for an individual if that individual is found to be a "person requiring treatment." MCL 330.1468(2). "A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465. The term "person requiring treatment" is defined in MCL 330.1401.[2]

---

[2] MCL 330.1401 provides:

> (1) As used in this chapter, "person requiring treatment" means (a), (b), or (c):
>
> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

The question we must answer involves the scope of the right to counsel afforded to an individual who is the subject of a petition. In the criminal context, "the right to counsel is the right to the effective assistance of counsel," and "[c]ounsel . . . can . . . deprive a defendant of the right to effective assistance, simply by failing to render adequate legal assistance." *Strickland*, 466 US at 686 (quotation marks and citations omitted). "The benchmark for judging any claim of ineffectiveness" in the criminal context is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. A criminal defendant's right to the effective assistance of counsel is protected by the Sixth Amendment of the United States Constitution and the analogous provision of the Michigan Constitution. See US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

However, the right to counsel has been provided by statute to subjects of petitions in civil commitment proceedings, MCL 330.1454(1) and (2), and "[i]t is axiomatic that the right to counsel includes the right to competent counsel," *In re Trowbridge*, 155 Mich App 785, 786; 401 NW2d 65 (1986). In the context of child-protective proceedings, which also are not criminal proceedings,[3] this Court has determined that constitutional due process indirectly guarantees a right to the effective assistance of counsel. *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009); see also *In re Martin*, 316 Mich App 73, 85-86; 896 NW2d 452 (2016). Child protective

---

(b) An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

(2) An individual whose mental processes have been weakened or impaired by a dementia, an individual with a primary diagnosis of epilepsy, or an individual with alcoholism or other drug dependence is not a person requiring treatment under this chapter unless the individual also meets the criteria specified in subsection (1). An individual described in this subsection may be hospitalized under the informal or formal voluntary hospitalization provisions of this chapter if he or she is considered clinically suitable for hospitalization by the hospital director.

[3] The right to counsel in child-protective proceedings is provided by statute. MCL 712A.17c(4)-(9).

proceedings involve important fundamental rights protected by due process, as our Supreme Court has explained:

> The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." US Const, Am XIV, § 1. Included in the Fourteenth Amendment's promise of due process is a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." Among these fundamental rights is the right of parents to make decisions concerning the care, custody, and control of their children. In the words of this Court, "[p]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." [*In re Sanders*, 495 Mich at 409 (some citations omitted; alterations and ellipsis in original).]

The United States Supreme Court has recognized that civil commitment proceedings also implicate important liberty interests protected by due process. The Court has stated that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," *Addington v Texas*, 441 US 418, 425; 99 S Ct 1804; 60 L Ed 2d 323 (1979),[4] and that

> [w]e have recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty and in consequence requires due process protection. The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. It is indisputable that commitment to a mental hospital can engender adverse social consequences to the individual and that [w]hether we label this phenomena stigma or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual. Also, [a]mong the historic liberties protected by the Due Process Clause is the right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security. Compelled treatment in the form of mandatory behavior modification programs, to which the District Court found Jones was exposed in this case, was a proper factor to be weighed by the District Court. [*Vitek v Jones*, 445 US 480, 491-492; 100 S Ct 1254; 63 L Ed 2d 552 (1980) (plurality opinion by WHITE, J.) (quotation marks and citations omitted; ellipsis and second and third alterations in original); see also *id.* at 497 (POWELL, J., concurring in part).]

In *Vitek*, 445 US at 492, the Supreme Court concluded that were "an ordinary citizen to be subjected involuntarily to these consequences, it is undeniable that protected liberty interests would be unconstitutionally infringed absent compliance with the procedures required by the Due

---

[4] See also *Specht v Patterson*, 386 US 605, 608; 87 S Ct 1209; 18 L Ed 2d 326 (1967) (stating that civil commitment proceedings are subject to the Due Process Clause).

Process Clause."[5]  This Court has also recognized that civil commitment proceedings in Michigan implicate important liberty interests, protected by due process, that belong to the person who is the subject of a petition for involuntary mental health treatment.  *In re KB*, 221 Mich App 414, 419; 562 NW2d 208 (1997).  "It is axiomatic that an individual subjected to involuntary mental health treatment will be significantly affected by the order because treatment decisions will be made for the individual and, if inpatient treatment is ordered, his or her freedom of movement will be limited."  *In re Tchakarova*, 328 Mich App 172, 181; 936 NW2d 863 (2019).  Furthermore, an order for involuntary mental health treatment or hospitalization can have "collateral legal consequences," *id*. at 179, in addition to adverse social consequences significantly impacting the individual, *Addington*, 441 US at 425-426.

Determining what due process requires in a particular situation—here whether the subject of a petition in civil commitment proceedings is entitled to the *effective* assistance of counsel— involves application of the test set forth by the United States Supreme Court in *Mathews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976).  See *Addington*, 441 US at 425; *In re KB*, 221 Mich App at 419.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  [*Mathews*, 424 US at 335.]

Accordingly, our analysis entails balancing the individual's interest in not being subject to involuntary mental health treatment against the state's interest in compelling mental health treatment for a particular individual.  See *Addington*, 441 US at 425.

The private interest at stake in civil commitment proceedings is, without question, significant and nuanced.  Considering the possibility of involuntary hospitalization in these proceedings, the individual's physical liberty is obviously at issue.  *Vitek*, 445 US at 491-492 (plurality opinion by WHITE, J.); *id*. at 497 (POWELL, J., concurring in part); *Addington*, 441 US at 425-426.  The individual also possesses a liberty interest, protected by due process, to be free from unjustified, compelled participation in mandatory mental health treatment.  *Vitek*, 445 US at 492 (plurality opinion by WHITE, J.); *id*. at 497 (POWELL, J., concurring in part).  However, it is also necessary to consider the nature and purpose of civil commitment proceedings, because the interest at stake for a person subject to a petition is not as simple as avoiding involuntary treatment in all situations.

---

[5] A majority of the Court concurred in this conclusion by the plurality because Justice POWELL concurred in this part of the plurality opinion.  *Vitek*, 445 US at 497 (POWELL, J., concurring in part).

As we have already noted, proceedings seeking involuntary mental health treatment for an individual are civil proceedings, *In re Portus*, 325 Mich App at 394 n 6, although not of the "typical" variety "involving a monetary dispute between private parties," *Addington*, 441 US at 423. The involuntary mental health treatment proceedings involved in this case, even though they carry the potential for curtailing an individual's liberty for a period of hospitalization, nonetheless cannot "be equated to a criminal prosecution." *Addington*, 441 US at 428. "In a civil commitment state power is not exercised in a punitive sense." *Id*. Instead, the intended outcome of these proceedings is to provide appropriate treatment if the individual is found to require it. MCL 330.1468(2); MCL 330.1401; MCL 330.1465.

An individual subject to a petition clearly possesses a strong interest "in not being arbitrarily classified as mentally ill and subjected to unwelcome treatment." *Vitek*, 445 US at 495 (plurality opinion by WHITE, J.); *id*. at 497 (POWELL, J., concurring in part).

> At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. Obviously, such behavior is no basis for compelled treatment and surely none for confinement. However, there is the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct. Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. [*Addington*, 441 US at 426-427.]

However, the inquiry involved in these circumstances is primarily a medical one that " 'turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists.' " *Vitek*, 445 US at 495 (plurality opinion by WHITE, J.), quoting *Addington*, 441 US at 429; see also *Vitek*, 445 US at 497 (POWELL, J., concurring in part). A person in need of treatment due to debilitating mental illness and meeting the statutory definition of a person requiring treatment, MCL 330.1401, also has an interest in obtaining the potential benefit of treatment that is properly warranted. See *Addington*, 441 US at 429-430.

Duties specific to the civil commitment context have been placed by court rule and statute on attorneys representing individuals who are subject to a petition. "The attorney of record must represent the individual in all probate court proceedings under the Mental Health Code until the attorney is discharged by court order or another attorney has filed an appearance on the individual's behalf." MCR 5.732(A). Generally, the "attorney must serve as an advocate for the individual's preferred position." MCR 5.732(B). However, "[i]f the individual does not express a preference, the attorney must advocate for the position that the attorney believes is in the individual's best interest." MCR 5.732(B). Additionally, pursuant to MCL 330.1454(7)-(8):

> (7) Legal counsel shall consult in person with the subject of a petition at least 24 hours before the time set for a court hearing.

> (8) Legal counsel for the subject of a petition under section 452(1)(a) who is hospitalized pending the court hearing shall consult in person with the individual for the first time not more than 72 hours after the petition and 2 clinical certificates have been filed with the court.

(9) After the consultation required in subsection (7) or (8), counsel promptly shall file with the court a certificate stating that he or she personally has seen and has consulted with the subject of a petition as required by this section.

An individual's right to be represented by counsel in these circumstances has also been protected from inadvertent waiver by court rule and statute. Under MCR 5.732(C),

The individual may waive an attorney only in open court and after consultation with an attorney. The court may not accept the waiver if it appears that the waiver is not voluntarily and understandingly made. If an attorney is waived, the court may appoint a guardian ad litem for the individual.

Additionally, MCL 330.1454 provides in relevant part:

(3) If, after consultation with appointed counsel, the subject of a petition desires to waive his or her right to counsel, he or she may do so by notifying the court in writing.

(4) If the subject of a petition prefers counsel other than the initially appointed counsel, the preferred counsel agrees to accept the appointment, and the court is notified of the preference by the subject of the petition or the preferred counsel, the court shall replace the initially appointed counsel with the preferred counsel.

(5) If the subject of a petition is indigent, the court shall compensate appointed counsel from court funds in an amount that is reasonable and based upon time and expenses.

"[S]tate statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek*, 445 US at 488 (plurality opinion by WHITE, J.); *id*. at 497 (POWELL, J., concurring in part). The Supreme Court has stated that "[i]t is precisely [t]he subtleties and nuances of psychiatric diagnoses that justify the requirement of adversary hearings." *Id*. at 495 (plurality opinion by WHITE, J.) (quotation marks and citation omitted); *id*. at 497 (POWELL, J., concurring in part). A right to the effective assistance of counsel for individuals subject to petitions in civil commitment proceedings thus protects the important liberty interests at stake because "if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *United States v Cronic*, 466 US 648, 656-657; 104 S Ct 2039; 80 L Ed 2d 657 (1984). The nature of the private interests at stake warrant concluding that due process gives individuals a right to the effective assistance of counsel in civil commitment proceedings. *Mathews*, 424 US at 335.

Turning to the second factor under *Mathews*, it is well established that a right to counsel necessarily implies that counsel will be effective. *Strickland*, 466 US at 686. Otherwise, the provision of "counsel" would be a meaningless exercise. *Cronic*, 466 US at 654-655. Moreover, a person "thought to be suffering from a mental disease or defect requiring involuntary treatment probably has an even greater need for legal assistance, for such a [person] is more likely to be unable to understand or exercise his rights." *Vitek*, 445 US at 496-497 (plurality opinion by WHITE,

J.).  As the United States Supreme Court recognized in *Minnesota ex rel Pearson v Probate Court of Ramsey Co*, 309 US 270, 276-277; 60 S Ct 523; 84 L Ed 744 (1940), we also "recognize the danger of a deprivation of due process" in proceedings involving involuntary commitments based on mental illness, as well as "the special importance of maintaining the basic interests of liberty in a class of cases where the law though fair on its face and impartial in appearance may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons [subject to a petition] are not adequately safeguarded at every stage of the proceedings." (Quotation marks and citation omitted).  Accordingly, we conclude that there would be a high risk of an erroneous deprivation of important liberty interests in civil commitment proceedings without the effective assistance of counsel and that the probable value of requiring effective legal assistance is high.  *Mathews*, 424 US at 335.

Finally, turning to the governmental interest at stake, the "state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of mental health disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."  *Addington*, 441 US at 426; accord *In re KB*, 221 Mich App at 421 ("[W]ith respect to the governmental interests involved, the government has a significant interest in the protection of the individual and the general public.").  Under Chapter 4 of the Mental Health Code, the state only has an interest in obtaining court-ordered treatment for individuals who are found by clear and convincing evidence to be persons "requiring treatment" as that phrase is defined by statute.  MCL 330.1468(2); MCL 330.1465; MCL 330.1401.  Ensuring that an individual subject to a petition is provided with *effective* assistance of counsel also supports the state's interest in an accurate determination whether a person requires treatment as defined by statute.  "The subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations." *Addington*, 441 US at 430.  Given that counsel must be appointed for individuals subject to a petition if they do not have retained counsel and that the court shall compensate counsel if the individual is indigent, MCL 330.1454, the additional administrative cost and burden of also requiring counsel to be effective would appear to be virtually nonexistent and certainly justified to the extent it exists. *Mathews*, 424 US at 335.

Accordingly, we conclude that due process requires that an individual subject to a petition in civil commitment proceedings has a right to the effective assistance of counsel.  *Mathews*, 424 US at 335.

In evaluating a claimed denial of the right to effective assistance of counsel in the civil commitment context, we adopt the familiar and well-established test that has developed in the criminal context, as we have done in the context of other civil proceedings. See *In re Martin*, 316 Mich App at 85.  Accordingly, the "benchmark for judging any claim of ineffectiveness" is "whether counsel's conduct so undermined the proper functioning" of the process that it cannot be relied on to have produced a "just result." *Strickland*, 466 US at 686.  First, the respondent must show that counsel's performance was "deficient" under an "objective standard of reasonableness." *Id*. at 687-688.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by due process. *Id*. at 687.  Second, the respondent must show prejudice by demonstrating that "counsel's errors were so serious as to deprive the [respondent] of a fair [hearing] . . . whose result is reliable." *Id*.

-10-

We recognize the special challenges for counsel in these proceedings, challenges which are reflected in the duties outlined for counsel in MCL 330.1454 and MCR 5.732. Thus, these provisions are proper considerations to include in determining whether counsel's performance was objectively deficient or prejudiced the respondent. However, as with the duties of an attorney in criminal cases discussed by the Supreme Court in *Strickland*, "[t]hese basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance." *Strickland*, 466 US at 688.

## B. APPLICATION TO THIS CASE

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Trakhtenberg*, 493 Mich at 47. If no evidentiary hearing was held in the lower court to create a factual record related to the alleged ineffective-assistance-of-counsel claims, see *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973), then appellate review is "for errors apparent on the record, though we retain the authority to remand for an evidentiary hearing if one is needed," *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346044); slip op at 10. As explained above, respondent must demonstrate that counsel's performance was "deficient" under an "objective standard of reasonableness" and that "counsel's errors were so serious as to deprive the [respondent] of a fair [hearing] . . . whose result is reliable." *Strickland*, 466 US at 687-688.

Here, respondent argues that his counsel was ineffective by failing to cross examine Dr. Rana; failing to adequately investigate the petition by failing to question petitioner at any time before the hearing and, relatedly, failing to call petitioner as a witness during the hearing; impeaching his own witness, Denise; and repeatedly impeaching and disparaging respondent. Respondent essentially alleges that his counsel did not advocate for respondent's preferred position regarding mental health treatment, MCR 5.732(B), thereby undermining the adversarial process and failing to protect respondent's liberty interests such that the hearing was unfair, unreliable, and resulted in an unjust outcome.

Respondent testified at the hearing that although petitioner filed the petition, petitioner did not have direct knowledge of the information alleged in the petition. Respondent maintained that the allegations in the petition were untrue. Petitioner was not called to testify by any party. During closing argument, petitioner's counsel stated:

> I didn't -- I didn't call grandma. I didn't call petitioner. I don't -- I don't really know what she would say. But we can just read what was in the petition.

Although the various decisions by counsel of which respondent now complains may have been justified by legitimate trial strategy, counsel's statement at the hearing suggests a deficit in the adequacy of the investigation on which those strategic choices may have been based. As our Supreme Court has explained:

> In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy. Yet

-11-

a court cannot insulate the review of counsel's performance by calling it trial strategy. Initially, a court must determine whether the "strategic choices [were] made after less than complete investigation," and any choice is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Counsel always retains the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." [*Trakhtenberg*, 493 Mich at 52 (citations omitted; alteration in original).]

An attorney's failure to exercise "reasonable professional judgment when deciding to forgo particular investigations" relevant to effectively representing the attorney's client does not constitute a reasonable strategic decision that satisfies the standard of objectively reasonable performance. *Id*. at 52-53.

Taking note of the relatively undeveloped state of Michigan law regarding the due-process right to the effective assistance of counsel in civil commitment proceedings, we conclude that respondent is entitled to an evidentiary hearing to develop the factual record related to his claims of ineffective assistance and we remand this matter to the probate court for that purpose. *Ginther*, 390 Mich 436, 443-445; *Smith*, ___ Mich App at ___; slip op at 10; MCR 7.216(A)(5).

On remand, the probate court shall hold a *Ginther* hearing to first examine whether counsel's performance was "deficient" under an "objective standard of reasonableness." *Strickland,* at 687-688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by due process. *Id*. at 687. Second, the probate court shall determine whether respondent was prejudiced by demonstrating that "counsel's errors were so serious as to deprive the [respondent] of a fair [hearing] . . . whose result is reliable." *Id*.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens